# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# AT LONDON

CIVIL ACTION NO. 18-153-DLB

ROBERT WAYNE YADEN                                                              PLAINTIFF

v.                  **MEMORANDUM OPINION AND ORDER**

ANDREW SAUL,[1] Commissioner
of the Social Security Administration                                  DEFENDANT

\*\* \*\* \*\* \*\* \*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, will **affirm** the Commissioner's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 8, 2016, Plaintiff Robert Wayne Yaden protectively filed for a period of disability and Disability Insurance Benefits (DIB) under Title II, alleging disability beginning March 8, 2015. (Tr. 11). Plaintiff alleged that he was unable to work due to, *inter alia*, high blood pressure, high cholesterol, bad knees, degenerated discs in neck, abdominal aneurism, and worn-out cartilage in thumbs. (Tr. 137). The application was initially denied, and again on reconsideration. (Tr. 11). At Plaintiff's request, an administrative hearing was conducted on August 9, 2017 before Administrative Law

---

[1]  Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019, during the pendency of this action. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Saul is automatically substituted as a party.

1

Judge (ALJ) Joyce Francis. *Id.* On October 25, 2017, ALJ Francis ruled that Plaintiff was not entitled to benefits. (Tr. 11–20). This decision became the final decision of the Commissioner on April 12, 2018 when the Appeals Council denied Plaintiff's request for review. (Tr. 1–3).

Plaintiff filed the instant action on May 21, 2018 claiming that the Commissioner's decision was not supported by substantial evidence. (Doc. # 1). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 7 and 9).

## II. DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must affirm the Commissioner's decision as long as it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999). If supported by substantial evidence, then the Commissioner's findings must be affirmed, regardless of whether there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative

decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781–82 (6th Cir. 1996).

### B. The ALJ's Determination

To determine disability, the ALJ conducts a five-step analysis. Step One considers whether the claimant has engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe;" Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The burden of proof rests with the claimant on Steps One through Four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). As to the last step, the burden of proof shifts to the Commissioner to identify "jobs in the economy that accommodate the claimant's residual functional capacity." *Id.* The ALJ's determination becomes the final decision of the Commissioner if the Appeals Council denies review, as it did in this case. *See Thacker v. Berryhill*, No. 16-cv-114, 2017 WL 653546, at *1 (E.D. Ky. Feb. 16, 2017); (Tr. 1–3).

Here, at Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 8, 2015, the alleged onset date of disability. (Tr. 13). At Step Two, the ALJ determined that Plaintiff has the following severe impairment: arthritis of carpometacarpal joint of thumbs. *Id.* The ALJ determined that Plaintiff's other impairments—abdominal aortic aneurysm, chronic cholecystitis, mild hepatomegaly, right renal cyst, hypertension, hyperlipidemia, gastroesophageal reflux disease,

3

hyperglycemia, and obesity—were not severe. (Tr. 13–14). At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 14–15). At Step Four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, except he can only frequently finger and feel.[2] (Tr. 15–18). Based on this RFC, the ALJ concluded that Plaintiff was able to perform his past relevant work as a postmaster. (Tr. 18). Even though Plaintiff failed to meet his burden at Step Four to show he could not perform his past work, the ALJ still proceeded to Step Five and determined that there were also other jobs existing in significant numbers in the national economy that Plaintiff could perform. The ALJ was not required to proceed to Step Five because Plaintiff did not meet his burden at Step Four. *See infra*; *see also* 20 C.F.R. § 404.1520(a)(4)(iv) ("If you can still do your past relevant work, we find that you are not disabled."). Plaintiff, however, did not challenge the ALJ's findings at this step, so the Court will not review the ALJ's Step-Five determination. (Tr. 18–19). Accordingly, the ALJ ruled that Plaintiff was not under a disability, as defined in the Social Security Act. (Tr. 20).

### C. Analysis

Plaintiff presents three arguments in support of his Motion for Summary Judgment. (Doc. # 7-1). First, Plaintiff claims that the ALJ's RFC determination is not supported by substantial evidence. *Id.* at 8–11. Next, Plaintiff asserts that the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain. *Id.* at 11–13. Finally, Plaintiff

---

[2] According to the SSA Program Operations Manual System, "frequently" means that the activity or condition occurs between one-third and two-thirds of an eight-hour workday as opposed to "constantly," which means that the activity or condition occurs two-thirds or more of the time. *See Winn v. Comm'r of Soc. Sec.*, 894 F.3d 982, 987 (8th Cir. 2018).

argues that the ALJ's determination that Plaintiff could return to his past work is not supported by substantial evidence. *Id.* at 14–16. The Court will consider each argument in turn.

### 1. The ALJ's RFC determination is supported by substantial evidence.

An RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996). Stated another way, the RFC is "what an individual can still do despite his or her limitations." *Id.* "In assessing the total limiting effects of [the claimant's] impairment(s) and any related symptoms, [the ALJ] will consider all of the medical and nonmedical evidence" in the record. 20 C.F.R. § 404.1545(e). The ALJ is only required to incorporate those limitations that she finds credible in the RFC assessment. *Irvin v. Soc. Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014). A reviewing court gives "the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity . . . of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476.

Plaintiff argues that the medical evidence in the record does not support the ALJ's determination that Plaintiff has the RFC to perform a full range of work at all exertional levels, except he can only frequently finger and feel. (Doc. # 7-1 at 8–11). Plaintiff claims that "when the record . . . is considered in its entirety, the combined effects of Mr. Yaden's physical impairments, reflect that he could not perform a wide range of even light work on a regular and sustained basis." *Id.* at 9. Plaintiff makes three assertions in support of his

argument. First, Plaintiff suggests that the ALJ improperly weighed the severity of Plaintiff's medical impairments. *Id.* at 10. Second, Plaintiff claims that the ALJ did not consider the entirety of the record. *Id.* at 10–11. Finally, Plaintiff argues that the ALJ should have given controlling weight to the medical opinions of treating source Dr. Christopher Basham. *Id.* at 11. The Court will address each argument separately.

### a. Severity of Impairments

Plaintiff claims that the ALJ erred by failing to find his aortic aneurysm, chronic cholecystitis, mild hepatomegaly, right renal cysts, hypertension, hyperlipidemia, gastroesophageal reflux disease, hyperglycemia, and obesity to be severe impairments during Step Two of her analysis. (*Id.* at 10). Plaintiff argues that the ALJ's finding that his only severe impairment is arthritis of carpometacarpal joint of thumbs is "completely erroneous" and claims that he has additional severe impairments. *Id.* Regardless of whether Plaintiff is correct, the ALJ did not commit reversible error by finding only one severe impairment.

The severity inquiry at Step Two is "a *de minimis* hurdle in the disability determination process," meant to screen out frivolous claims. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (internal quotations and citations omitted); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007). If the ALJ finds at least one of the claimant's alleged impairments is severe in nature, the claim survives Step Two. 20 C.F.R. §404.1520(a)(4). Because the Regulations instruct the ALJ to consider both severe and non-severe impairments in the remaining steps of the disability determination analysis, any impairment erroneously labeled as "non-severe" will not be ignored altogether. 20 C.F.R. § 404.1545(a)(2). Both severe and non-severe impairments are

6

then considered during the remainder of the ALJ's five-step analysis, at which point it is "'legally irrelevant' that [ ] other impairments were determined to be not severe." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (quoting Anthony v. Astrue, 266 F. App'x 451, 457 (6th Cir. 2008)).

Here, Plaintiff correctly notes that the ALJ only found one of his impairments to be severe. (Tr. 13–14). That finding, however, permitted the ALJ to continue the five-step analysis. *See* (Tr. 14–19). In her remaining analysis, ALJ Francis considered other impairments, both severe and non-severe. *See, e.g.*, (Tr. 15–17) (noting that Plaintiff's weakness, pain, and other symptoms from a combination of impairments are not debilitating). Thus, even assuming there was an error in determining the severity of Plaintiff's impairments, it would be harmless. The Court finds no error in this part of the ALJ's analysis.

### b. Entirety of the Record

Plaintiff next complains that the ALJ's RFC determination "failed to even address" several of Plaintiff's alleged impairments. (Doc. # 7-1 at 11). Specifically, Plaintiff alleges that the ALJ ignored Plaintiff's carpal tunnel, knee pain, and limited ability to lift objects heavier than 10 pounds. *Id.* at 10–11. Plaintiff is incorrect.

While the substantial evidence standard of review is "quite deferential to the findings of the Commissioner," the ALJ must still make all determinations "based upon the record in its entirety." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007). Assessing the record as a whole "helps to ensure that the focus in evaluating an application does not unduly concentrate on one single aspect of the claimant's history, if that one aspect does not reasonably portray the reality of the claimant's circumstances."

7

*Id.* If the ALJ examined the record as a whole and the ALJ's decision is supported by substantial evidence, then this Court must affirm the ALJ's decision, even if the Court might have decided the case differently. *Listenbee*, 846 F.2d at 349.

Plaintiff first argues that the ALJ did not properly consider his hand and wrist pain, which Plaintiff claims is caused by carpal tunnel. (Doc. # 7-1 at 10). Plaintiff, however, ignores crucial factual determinations the ALJ made about his alleged hand pain. For example, Plaintiff is correct that Watauga Orthopedics records state that Plaintiff had osteoarthritis of his hands bilaterally from August 31, 2016 through December 1, 2016. (Tr. 462–500). Plaintiff neglects to mention, however, that later Watauga Orthopedics records from December 9, 2016 through May 25, 2017 show that Plaintiff's hand pain significantly improved after surgery and physical therapy. (Tr. 637–76). The ALJ made no such mistake. Rather, ALJ carefully considered all medical records regarding Plaintiff's hand impairments when making her RFC determination. The ALJ describes the progression of Plaintiff's hand pain from the onset of his injuries to his considerable improvement after surgery and physical therapy. (Tr. 16). The Court finds that the ALJ's finding is supported by substantial evidence in the record. *See, e.g.*, (Tr. 472, 478, 642, 658). Thus, the Plaintiff's claim that the ALJ failed to consider the entirety of the record with regard to his hand pain is meritless.

The ALJ also carefully considered Plaintiff's alleged knee pain and difficulty lifting heavy objects. The ALJ recognized that Plaintiff testified during the administrative hearing that his knee problems contribute to his inability to work, that he has arthritis in his knees, and that he could only lift 15 to 20 pounds. (Tr. 15, 30, 36). The ALJ then went on to explain why Plaintiffs testimony was not entirely consistent with the medical

evidence and why she did not consider Plaintiffs alleged knee pain and difficulty lifting objects to be debilitating. (Tr. 15–17). The ALJ's determination is supported by substantial evidence in the record, which shows that Plaintiff did not receive medical treatment for knee pain. *See, e.g.*, (Tr. 539–43) (medical record stating that while Plaintiff reported joint pain in his lower leg, his musculoskeletal range of motion was normal and no plan to address the lower leg pain was implemented). Furthermore, Dr. Christopher Basham was the only medical source to opine that Plaintiff had limited ability to lift heavy objects, and the ALJ properly gave Dr. Basham's opinion little weight, as discussed *infra*. The ALJ considered the entirety of the record when determining how Plaintiff's alleged hand problems, knee pain, and lifting ability influenced Plaintiff's RFC, and the Court finds no error in this portion of the ALJ's analysis.

### c. Medical Testimony

In social security disability cases, medical evidence may come from treating sources, non-treating sources, and non-examining sources. 20 C.F.R. § 404.1527. A treating source is the claimant's "own acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." *Id.*; *see also Abney v. Astrue*, No. 5:07-cv-394-KKC, 2008 WL 2074011, at *11 (E.D. Ky. May 13, 2008). A non-treating source is an acceptable medical source who has examined the claimant but does not have an ongoing treatment relationship with him or her, and a non-examining source has provided medical or other opinion evidence in the case without examining the claimant. *Abney*, 2008 WL 2074011, at *11; *see also* 20 C.F.R. § 404.1527.

Plaintiff claims that the ALJ should have given controlling weight to Dr. Christopher Basham's opinion on Plaintiff's knee pain. (Doc. # 7-1 at 10–11, 13). Defendant does not dispute that Dr. Basham is a treating source. *See* (Doc. # 9 at 10–11) (using the standard for treating sources to critique Dr. Basham's opinion).

A treating source's opinion is entitled to controlling weight if it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)). If a treating source's opinion is not entitled to controlling weight, then the ALJ considers the following factors in order to determine how much weight to give the opinion: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; and (5) the specialization of the treating source. *Id.* Ultimately, the ALJ must provide "good reasons" for giving less than controlling weight to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). A decision denying benefits must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The "treating physician rule," however, only applies to *medical* opinions. While a medical expert may opine "on issues such as whether [claimant's] impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments," as well as

10

claimant's residual functional capacity or the application of vocational factors, such opinions are not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(d)(2) (stating that "the final responsibility for deciding these issues is reserved to the Commissioner"). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010) (internal quotations and citations omitted).

Here, Plaintiff argues that the ALJ did not properly weigh the "Medical Assessment of Ability to do Work-Related Activities" form completed by Dr. Basham on July 18th, 2017. (Doc. # 7-1 at 11) (referencing Tr. 677–81). Dr. Basham opined on the form that Plaintiff could lift ten pounds frequently and 20 pounds occasionally. (Tr. 679). He stated that Plaintiff could stand and/or walk for a maximum of three hours in an eight-hour period and could only frequently climb, balance, stoop, crouch, kneel, or crawl due to knee pain. (Tr. 680). Additionally, Dr. Basham reported that Plaintiff's reaching, handling, pushing, and pulling were impaired due to lack of grip strength. (Tr. 680).

Dr. Basham's opinion is not entitled to controlling weight because it lacks proper support and is inconsistent with substantial evidence in the case record.[3] For example, when asked what medical findings support his assessment that Plaintiff's ability to stand and walk is impaired, Dr. Basham only stated: "exam of knees." (Tr. 679). No medical records are attached to his assessment in support of this conclusion. Such a broad

---

[3] Dr. Basham's opinion, at first blush, may seem like an opinion on an issue of the claimant's RFC which should be left to the Commissioner, 20 C.F.R. § 404.1527(d)(2), rather than a medical opinion. If that is the case, then Dr. Basham's opinion would still not be entitled to controlling weight. *See Turner*, 381 F. App'x at 493. The Court is satisfied, however, that Dr. Basham's opinion meets the standard for medical opinions. *See* 20 C.F.R. § 404.1513(a)(2) ("A medical opinion is a statement from a medical source about . . . [y]our ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions.").

generalization provides little support, if any, for his opinion. Additionally, substantial evidence in the record contradicts Dr. Basham's findings. Although several medical records note that Plaintiff reported knee pain, many records—including records by Dr. Basham—repeatedly state that Plaintiff's musculoskeletal examination was normal and that no doctor-prescribed treatment for knee pain was necessary. *See, e.g.*, (Tr. 306, 393, 443, 539–43). Because Dr. Basham's opinion is not well-supported and is inconsistent with the record as a whole, the ALJ did not err by refusing to give Dr. Basham's opinion controlling weight.

The ALJ provided good reasons for giving Dr. Basham's opinion little weight. The ALJ explained that:

> While Dr. Basham has treated the claimant, the treatment addressed other conditions that are considered non-severe. Additionally, Dr. Basham has not provided the claimant with significant treatment for his carpometacarpal joint arthritis, which is the severe impairment being considered herein. Consequently, the medical evidence of record does not support the level of severity assessed by Dr. Basham, especially in light of the claimant's most recent treatment records that document him to improve significantly with surgery and physical therapy.

(Tr. 17). The ALJ considered the nature of the treatment relationship, the supportability of Dr. Basham's opinion, the consistency of the opinion with the record as a whole, and the specialization of Dr. Basham. As Plaintiff's primary care physician, Dr. Basham did not provide Plaintiff with extensive care for either his carpometacarpal joint arthritis or his knee pain, the two medical findings Dr. Basham uses to justify his opinion. (Tr. 679–80). Dr. Basham primarily treated Plaintiff for chronic medical conditions that are well-controlled by medication. *See, e.g.*, (Tr. 350–56, 524–30). The ALJ provides enough specificity for a subsequent reviewer to know why Dr. Basham's opinion was accorded little weight despite his status as a treating physician. Thus, the Court finds no error with

12

the ALJ's weighing of Dr. Basham's opinion. Accordingly, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

### 2. The ALJ properly evaluated Plaintiff's subjective complaints of pain.

Although relevant to the RFC assessment, a claimant's description of his or her symptoms is not enough, on its own, to establish the existence of physical or mental impairments or disability. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). When evaluating a claimant's symptoms, the ALJ must determine whether there is an underlying medically-determinable impairment that could be reasonably expected to produce the alleged symptoms. *Id.* Once that is established, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.*

When the Plaintiff's complaints regarding the intensity and persistence of his or her symptoms are unsupported by objective medical evidence, the ALJ must make a credibility determination "based on a consideration of the entire case record," including laboratory findings, information from treating physicians, Plaintiff's complaints of symptoms, and other relevant evidence. *Rogers*, 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996)). After making a credibility determination, the ALJ must explain that decision with enough specificity and clarity "so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2016 WL 1119029, at *9. "[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. Once the ALJ has made the credibility determination, the reviewing court

must give great weight and deference to that conclusion. *Id.* at 247.

Here, Plaintiff complains that the ALJ "failed to properly assess Plaintiff's subjective complaints" and that "Plaintiff's own testimony regarding his pain level is uncontradicted in the record." (Doc. # 7-1 at 13). Once again, Plaintiff is mistaken. Plaintiff testified at the administrative hearing that his pain ranged between a six and an eight on a ten-point scale, with ten being the worst. (Tr. 32). Plaintiff stated that he is able to shower and dress by himself, cook, shop, perform yardwork, attend church, and visit his family multiple times a week. (Tr. 33–34).

At Step Four, the ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms," but that Plaintiff's statements and allegations "concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. 15). The ALJ explained that most of Plaintiff's "physical examinations have been unremarkable, and his treatment records indicate that his symptoms are adequately addressed with use of his prescribed medication." (Tr. 16). The ALJ also noted that once the Plaintiff had surgery on his thumbs the Plaintiff "participated in physical therapy that he stated significantly helped his complaints [including pain]. He indicated that his wrist splint was working well, and he had more movement and use of his hand. His physical examination revealed good range of motion in the thumb and slightly diminished strength." (Tr. 16). The ALJ went on to describe how Plaintiff "has not required recurrent inpatient hospitalizations, recurrent emergency room visits, surgeries, and prolonged physical therapy for his allegedly disabling impairments" and that "no treating source has advised the [Plaintiff] to stay home all day,

lie down during the day, or to restrict his activities of daily living in any manner." (Tr. 17). The record supports the ALJ's determination that Plaintiff's testimony is not entirely credible. *See, e.g.*, (Tr. 466, 642) (reporting that Plaintiff's condition is improving with physical therapy).

Additionally, there is significant evidence that Plaintiff can undertake a number of daily activities, despite his pain. (Tr. 33–34). The participation in such household activities may also be considered by the ALJ "in evaluating complaints of disabling pain or other symptoms." *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993). The ALJ recognized that despite his alleged impairments, Plaintiff "attends to his personal care needs, cooks, shops, performs yard work, attends church weekly, and visits family a couple of times a week." (Tr. 15).

Based on this evidence, a reasonable person could conclude that Plaintiff's pain is not so debilitating that he should be deemed disabled. Thus, the ALJ's determination regarding Plaintiff's pain is supported by substantial evidence. *Cutlip*, 25 F.3d at 286. It is not the job of the Court to "re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014). Rather, this Court must determine if there is substantial evidence to support the ALJ's decision and uphold that decision even if "substantial evidence also would have supported a finding other than the one the ALJ made." *Smith*, 99 F.3d at 781-82. The ALJ concluded that Plaintiff's statements regarding the intensity, frequency, and limiting effects of his symptoms were not entirely credible. Having reviewed the ALJ's credibility assessment, which carefully detailed the inconsistencies between Plaintiff's daily activities, subjective complaints of pain, and the objective medical evidence, the Court finds no error.

### 3. The ALJ's determination that Plaintiff could return to his past work is supported by substantial evidence.

At Step Four of the sequential analysis, the ALJ must determine whether the claimant can still perform his or her past relevant work. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e). The term "past relevant work" is work that the claimant has "done within the past fifteen years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 416.960(b)(1). When evaluating whether a claimant can perform past relevant work, the regulations require the ALJ to examine the claimant's RFC and compare it to the physical and mental demands of the claimant's past relevant work. *Boucher v. Apfel*, 238 F.3d 419, 2000 WL 1769520 at *5 (6th Cir. 2000) (unpublished table opinion); 20 C.F.R. § 404.1520(f).

There are "[t]hree possible tests for determining whether or not a claimant retains the capacity to perform his or her past relevant work." SSR 82-61, 1982 WL 31387, at *1 (Jan. 1, 1982). The first test asks "[w]hether the claimant retains the capacity to perform a past relevant job based on a broad, generic occupation classification of that job, *e.g.*, 'delivery job,' 'packaging job,' etc." *Id.* A "[f]inding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable." *Id.* The second test asks "[w]hether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it." *Id.* "Under this test, where the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be 'not disabled.'" *Id.* at 2. Finally, the third test asks "[w]hether the

claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." *Id.*

There are circumstances where analysis under the three past-relevant-work tests will produce conflicting results. Within a broad occupational classification, work can be performed in many ways. The Commissioner has recognized this dichotomy and contemplated the possibility that a "former job performed by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy." *Roark v. Comm'r of Soc. Sec.*, No. 17-cv-125, 2018 WL 561851, at *3 (E.D. Ky. Jan. 25, 2018) (citing SSR 82-61, 1982 WL 31387, at *1). In that situation, and "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" *Id.* Thus, as Plaintiff's argument fails to appreciate, even if Plaintiff satisfies the "actually performed" prong of Step Four and shows that he cannot do the exact same tasks previously performed, the Commissioner can still deny benefits under the "generally performed" prong if the Plaintiff's RFC enables him to perform his past relevant work, as *generally* required by employers. *Id.*

Here, Plaintiff argues that the ALJ erred by finding Plaintiff capable of performing his past relevant work as a postmaster. (Doc. # 7-1 at 15–16). Plaintiff complains that the ALJ failed to consider Plaintiff's unique duties as the only employee in a rural post office, like the need to lift more than seventy pounds. *Id.* at 16. Plaintiff claims that because he could not perform his particular former job, Plaintiff is disabled. *Id.* Plaintiff

17

is incorrect. Even if the Court assumes that Plaintiff could not perform his past job as a rural postmaster, Plaintiff would still not be disabled under the Social Security Act. An individual is only disabled if he or she could not perform either their particular past relevant work or their past job as it is generally performed in the national economy. *See Roark*, 2018 WL 561851, at *3. The vocational expert at Plaintiff's administrative hearing testified that a hypothetical person of Plaintiff's age, education, work experience, and RFC could perform Plaintiff's past work both as it was particularly performed and as it was performed based on national standards. (Tr. 39–40). In her decision, the ALJ adopted the vocational expert's opinion. (Tr. 18). Thus, even assuming that Plaintiff is correct that the ALJ mistakenly held that Plaintiff could perform his *particular* past work, Plaintiff would still not succeed because the ALJ found that Plaintiff could perform his past relevant work as it is *generally* performed. (Tr. 18). Plaintiff does not challenge the ALJ's determination that Plaintiff could perform his past relevant work as it is generally performed. Thus, it is legally irrelevant whether Plaintiff could perform his particular past work and any error the ALJ may have made would be harmless.

Plaintiff also argues that the ALJ failed to consider his past work in the underground coal mining industry. (Doc. # 7-1 at 16). The ALJ's omission, however, was proper. At Step Four, the ALJ is only required to consider past relevant work performed in the last fifteen years. 20 C.F.R. § 404.1560(b)(1). Plaintiff has not worked in the coal industry since the 1970s. (Tr. 30). Therefore, the ALJ was not required to evaluate Plaintiff's ability to return to work in the coal industry. The Court finds no error with the ALJ's analysis at Step Four.

## III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 7) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 9) is hereby **GRANTED**;

(4) This civil action is hereby **DISMISSED** and **STRICKEN** from the Court's active docket; and

(5) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 23rd day of August, 2019.

Signed By:
*David L. Bunning* DB
United States District Judge

K:\DATA\SocialSecurity\MOOs\London\18-153 Yaden MOO.docx